Sheriff, William Snyder, and others. We'll be happy to hear from counsel. Thank you. May it please the court, I am Randall Callinan for David Sosa, the appellant. This case is about two simple principles. First, it cannot be right for law enforcement to arrest and detain innocent people simply because their common name, in this case, David Sosa, and their common name alone matches one on a warrant, in this case, a 26-year-old warrant, out of Houston, Texas. Second, when a homeowner resident of a county, in this case, Martin County, is mistakenly arrested once already for that same warrant, in that same county, by that same agency, and he's going to live there probably for the rest of his life, how many more times should he be allowed to be arrested because they have not done something about it? In this age of computers, all you would have to do was, the county could just make a file, oh, there's David Sosa, he lives right over here in Stewart, Florida, in Martin County, why don't you just make a little file of people who are wrongfully arrested on warrants, and then if somebody like David Sosa, who is being taken in again, and says, like he did say, oh, I'm not that David Sosa, you already arrested me before, that's a different David Sosa because my height is different, my weight is different, the Social Security number is different, the date of birth is different, that happened in, the other warrant is in Houston, Texas, from Houston, Texas, and probably the biggest one, once again, is, oh, by the way, and I told this all the last time you all arrested me, and took me into the jail, and I spent three hours until you cleared me. When will this happen again? He was arrested, not arrested, on this false warrant twice, he was arrested in three and a half years, he owns a house there in Stewart, Florida, family, he's not moving, so he'll probably be there, if he lives the average life expectancy, for over twenty more years, maybe he'll get lucky and he'll get thirty, so if you take three and a half years as an average, and Martin's County Sheriff's Department has done nothing, he will be falsely arrested approximately eight more times. And when does it become unconstitutional? On the third time? On the fourth time? On the fifth time? It's unconstitutional, it was unconstitutional the first time, and if not then, certainly the second time. The case law in the Eleventh Circuit, probably the most one on point is called Rodriguez, and in that particular case, as pointed out in the briefing, there was a person who was identified by name, but nothing else, and in that case, I believe it was a summary judgment, the appellate court decided summary judgment should not have been granted in that case. But now this is on a motion to dismiss, so we haven't had no discovery yet, and no opportunity for discovery, there was motions to dismiss filed, and those motions to dismiss were granted. Now, in the case of David Sosa, oh by the way, there are thousands of people named David Sosa, the most common place to find a David Sosa is Texas, which maybe is why David Sosa got arrested in Texas, second most common place is Florida, where you'll find a David Sosa. Also many David Sosa's visit Florida from places like the Dominican Republic, the Caribbean, and now I guess in Cuba, I don't know, I think you can come to Cuba now directly. So, visitors and tourists to Florida named David Sosa could possibly get arrested. I just want to go through all of the differences that the, let me back up, the standard under Rodriguez versus Farrell out of the circuit says that it's the totality of the circumstances, so I want to give the totality of the circumstances, remember before we got any discovery, that is the height was a difference of four inches. Now, sometimes people might say four inches, well that's not too much, but the four inches was six foot, it was four or five, six foot to 5.8, and I'm five foot nine and a half, so to me that goes from tall guy, short guy, so the difference, even though it just sounds four inches, because humans sit around a bell curve, that it goes from tall to short. Council, just so you know, it's being recorded, but it won't pick up if you're away from the microphone. Oh, okay, I'm sorry. We do go back and listen to this, too, so it's important. Yeah, I'm sorry, I like to use a little movement in my presentation. So, the weight was different, it was 40 more pounds, people can, you know, lose and gain weight, however, the cases where involving weight and height that were dismissed involved 20 pounds or less, never 40 pounds, so that's more than those cases. But in fairness, I mean, over a 26 year period, one might see a change of 40 pounds, one might be lucky to see only a change of 40 pounds. Really lucky in some cases. So, the next one is lack of tattoos. The bad David Sosa out of Houston had a tattoo, this David Sosa didn't, and of course, you can always remove tattoos, but then there should be marks, but there was a lack of tattoos, and some of the case law talks is that's one of the factors, tattoos. Council, can I ask you a question? You mentioned four inches in height difference, where is that in the complaint? It's mentioned, height difference is mentioned, but not the exact number of inches. I apologize, go ahead. Yeah, and that could be an oversight, but that's what the motion, if we would have got discovery, that would have came out. And also, the time differential, when you're considering the totality of the circumstances, this was 26 years old, and apparently that David Sosa never got another warrant, whatever it is, so this single warrant was 26 years old, and some of the case law, such as Blackwell versus Martin of the Fifth Circuit, talks about location where the individual can be found, such as if a warrant comes out of Stewart, Florida, for example, not a huge place, and that's where the person is found, oh, well, you're in Stewart, Florida, your name is similar,  under Monell, that three and a half years ago, getting arrested, and this happened to him, could implicate Monell, not only because of the notice, but also because of repetition, because David told everybody he came into contact that first time at the arrest, including all the deputies, hey, I'm David Sosa, I'm not David Sosa, the bad David Sosa, and furthermore, he came into contact with a lot of jailers, because at the jail, of course, he's still complaining, I'm not that same, I'm not that David Sosa, they arrested me wrongfully, so although it's just two arrests, he's probably told 10, 11, 13 employees, who could do something about it, both deputies and jailers about this, so it was to no avail. Now, the standard for arresting someone is arguable, probable cause, whether a reasonable officer in the same circumstances, and possessing the same knowledge as the defendant, could have believed that probable cause existed to arrest, and that's from Lee Franco out of the 11th Circuit, and when you look at all of the differences, the time, and his testimony before, you know, check your records, Martin County, Martin County Sheriff's Department, that that would definitely be unreasonable. Furthermore, he was in jail the second time for three days. Now, the first time he was in jail for three hours, which is still a constitutional violation, by the way, we didn't sue for the earlier one, because that was So, what we have there also is a very lengthy time frame to figure things out, things that were figured out once before, in three hours, by the same agency. What do we do with the Supreme Court's Baker decision for the length of the arrest here, because of the mistaken identification? I believe in Baker, there were differences in Baker. First of all, in Baker, the plaintiff was mistaken for his actual wanted brother, and so that could, so there must have been some sort of I think that's, is that Hill, or? No, that's Baker, and one would have to look, and also, in Baker, there wasn't all these other identifiers that were not working, and when it comes to arrest, you have to take things at the time of the arrest, not in hindsight, and the information that they received was all this information that was in the complaint about the height, the weight, the difference in time, date of birth, Social Security number, because David gave an actual valid identification, which by the way, the identification, like the Florida identification, Texas driver's license, have been through some rigorous verifications and processes under what's called the Real ID Act, I don't know if you've heard of that, but that gives a lot of The hologram with the star thing. Yeah, and all that stuff, right, exactly. So that's what he gave, so he gave really good ID, and he's going to be arrested again, I would assume, unless something is done, and we're seeking injunctive relief as well, to get the sheriff to make this a little simple file, false arrests on bad warrant file. You've saved some time for rebuttal, and we'll hear from you then, thank you. Ms. Barranco? Good morning, and please, the court, and congratulations to Judge Martin. I'm sorry I made such a mess of it, I'm sorry you had to listen to all that, but it's good to see you. You as well, and all of you actually. As this court is, I'm sure, no doubt, quite well aware of the fact that not all wrongs, or perceived wrongs, rise to the level of a constitutional violation. There are many, many cases that get filed in this court, federal court, and obviously there needs to be jurisdictional issues that are met, and Mr. Sosa, through his counsel, decided to bring this lawsuit in federal court. Well, Judge Middlebrooks, with many, many years of experience on the bench, read the complaint, and that's important because the plaintiff's lawyer did have a chance to amend the complaint, and in fact did so. But Judge Middlebrooks read the amended complaint, and based on the precedent that plaintiff's counsel, or appellant's counsel, has already mentioned, ruled that there was no constitutional violation that was even alleged here. And as is the court's, certainly it's within the power of the court to dismiss a case if it fails to state a cause of action, and that is what happened here. Also, you know, although the plaintiff brought, or the appellant brought only one count, the one count was for a 1983 violation, and the judge below liberally construed that one count to include a 1983 false arrest claim, as well as a 1983 14th Amendment, the plaintiff referred to it as an over-detention claim, and the lower court mentioned that really was like a 1983 false imprisonment claim. Counsel, I'm sorry to interrupt, but I will tell you, I have some serious concerns with respect to the over-detention claim. And I think that this situation is sort of a unique fact pattern in that Mr. Sosa was a four-year period. And he told the officers, according to the complaint, that he had been previously arrested on this same warrant. He was not the same David Sosa. And yet he was still held for three days. It took three days to figure that out. And with the way that we read complaints on a motion to dismiss, right, we take them as true, and we give reasonable, we assume all reasonable inferences in the plaintiff's favor. It seems to me that that's enough to satisfy a 14th Amendment claim on the over-detention with acting with deliberate indifference. One, he had subjective knowledge of a risk of serious harm, here being he's been specifically told, this has happened to me before, and I am not the same David Sosa. Please look it up. He's actually, according to his complaint, he's actually told that it will be looked up on that same first day. Then second, the risk is disregarded, which I think we can fairly assume based on the fact that he's kept still for a total of three days, and it's done so by conduct that's more than mere negligence. And certainly if you have reason to believe that someone might be wrongly in custody, it seems like it would be more than mere negligence not to at least check up on that before three days have gone by. I mean, three days is a pretty substantial period. So I want to give you an opportunity to address that. I appreciate that, Your Honor. Well, three days happened to be the same amount of time that was mentioned in the Baker case, Baker versus . . . But Baker is different. In Baker, there's no prior detention, right? This hasn't happened before. Although he says, I'm not the right person, he doesn't . . . we have that here, too. I'm not the right person. He also says in our case, and this happened to me before, this exact same thing happened to me before by your department, no less. Please go and check and you'll see. So it seems like Baker might be distinguishable. Well, I think all the cases arguably on some levels are distinguishable because there's always going to be different facts. However, in terms of a deliberate indifference, one thing I wanted to make sure to point out to Your Honor is there are allegations in the complaint that don't support that. In fact, Paragraph 38, the plaintiff says, or the appellant said, that the deputies, despite the deputies looking into David's problems by informing their supervisors and the sheriff, no files or other system was created to prevent David and those like him from being wrongfully arrested. But isn't Paragraph 38 the one that refers to the prior arrest? Because it says after approximately three hours, it's referring to the earlier arrest. It's not referring to the one that he's suing about. Well, where it's stated, Your Honor, in the amended complaint, it comes after the 2018. I'm sorry. Paragraph 47 comes after the allegations about the 2018 arrest where it says, despite the deputies informing their supervisors and the sheriff, no files or other system was created to prevent David and others like him from being falsely arrested. But again, since we have to read this as favorably as we can to the plaintiff, it appears that here he's talking about after the second time, meaning after I told them all these things, they still didn't create any kind of system to prevent this from happening again. Am I reading that wrong? Maybe I am. Well, frankly, I suppose you could flip a coin and decide how you'd want to read this. Well, the problem, as you know, is on a motion to dismiss. Sure. I absolutely understand, Your Honor, if I may. The irony of the complaint is the beef that the appellant has with the sheriff's office. And they also mention Martin County. And they kind of interchangeably throw both of those names in there, which, frankly, is improper. But that's a different issue. The very beef that they raise is, you know, the sheriff's office didn't have, they didn't make up this nifty little list after the first arrest such that nobody would have known that the plaintiff, David Sosa, had been arrested before. But then the irony of that allegation is then how is it that the individual deputies, Kelo and Sanchez, are supposed to now know? And the case law is clear that the law enforcement officer on the street, which in this case would have been Deputy Kelo, for the April of 2018 arrest, you know, he wouldn't have, if there's no list, as the plaintiff alleges, there's no way that Deputy Kelo would have known such that there's no allegation. Ms. Marenko, so we've got to write an opinion that applies broadly. And so if I could just get your help in that regard. Of course. So in these cases where the wrong person's arrested, which goes on, you know, in your view of how the law should be on this, I mean, does it matter that this has happened before? Or should it be treated exactly the same, whether it's the first time, the second time, the third time the wrongful arrest takes place? Well, Your Honor, I think it would depend. Just as the courts say, it's a, the test when you're dealing with a warrant, mistaken identity type claim like this is, you do look at whether or not it's a reasonable mistake based on the details. And so is it made less reasonable by the fact that it's happened before and the problem was fixed within three hours? I think it is. Well, I think the problem, though, practical problem for the appellant is when you're going to sue an individual officer such as the road patrol officer who pulled Mr. Sosa over on April 20th of 2018, he doesn't know the appellant from anybody. Well, I mean, Chris, we've seen these cases over many years. And I assume, you know, there's technology, you know, that's available to governments to identify these situations where you've got someone living in your county who has been subject to a wrongful arrest on a previous occasion. I mean, right? Sure. And to address your practical question, Your Honor, and I didn't want to go too far afield because obviously we are on a rather limited record, but this was an out-of-state warrant. An old one. Yes, and a very old one. And that's an important thing. I know the judge below mentioned that that would be. Which way does that cut? I mean, you know, apparently these warrants can hang out there for a long time. Absolutely. And so in my view of the world, that should put the officer on notice. Well, I probably ought to do some double checking because, you know, what are the odds of this person on this 26-year-old Texas warrant showing up again here in Florida on this old warrant? It seems like to me the officer ought to know that that takes some, you know, double checking since the warrant's so old. I mean, it might not be a valid warrant anymore. Correct, Your Honor. And in fact, what's interesting about this case is you've got Deputy Sanchez, who's in the jail, versus Deputy Kelo, who's on the road doing this traffic stop. And he has to make a decision within minutes as to whether or not to take in this David Sosa on this old warrant from an out-of-state 27-year-old warrant. And the case law is clear that, number one, he does not have to, you know, just because somebody protests and say, it's not me, it's not me, they're not expected to be legal technicians or the judge. And you're, again, relying on these first false arrest cases, right? Well, the case law that does exist, yes. And, of course, it does matter depending on how many. And I think at some point, I think even… What point? Baker… What point? Third false arrest? I guess it depends on the totality of the circumstances.  Well, I… Third false arrest? It would depend how much time went between the arrest and who was involved in the arrest. If it had been alleged that Deputy Kelo arrested me on, you know, November of 2014, Deputy Kelo knew, Deputy da-da-da-da-da-da-da. He didn't allege that, probably because that wasn't the case. That kind of gets into the Monell aspect of this, though, doesn't it? I mean, you know, at some point, the department… What's the responsibility of the department here? Once there's some kind of a pattern developed, and here we have a pattern of two arrests of the same guy on a 26-year-old warrant, it's the wrong person, first time he's detained for three hours, the second time for three days. I mean, doesn't the department have some type of responsibility to create a system to prevent that from happening again? I mean, at the very least, all it would have to do would be to say, you know, in our community is not the David Sosa on this warrant. They could just put a note on that. I mean, there's, you know, there are very minor and easy things that seem like they could be done. Doesn't the department have some kind of a responsibility here? Well, certainly, on some levels, of course, the sheriff's office does have and does have a responsibility in terms of who they deal with. But it's important to remember that, you know, just because somebody like Mr. Sosa claims he's been wronged doesn't necessarily mean he's entitled to relief in federal court. As Judge Middlebrooks below mentioned, it very well may be that Mr. Sosa should be going into state court and talking about, you know, exactly what Your Honor is mentioning. Well, I mean, if his federal rights are violated, then, you know, there's a statute that provides for jurisdiction for him to file a federal claim. Well, and therein lies the question that we're here about today, Your Honor. And I understand what you're saying. Obviously, if he does allege or show that his constitutional rights were violated, that is one thing. But to just say that he'd been detained and as a matter of his pleadings, you know, he doesn't give you many details about the actual differences in the heights or the weights, but just says, oh, yeah, just conclusively, yeah, there were differences. The law is clear that the deputy on the street isn't the judge, doesn't have to be the judge. It was proper for him to take him into the jail. I feel like we're sort of mixing up different issues here. I mean, there are three different issues, right? The first issue is whether there's a violation with his initial arrest. The second issue is whether after, regardless of whether there was a violation with the arrest, whether he was overtained and over-detained in violation of his rights for the three days. And then the third issue is whether there's a Monell problem, whether the department, you know, has fallen down on the job. So, you know, whether the department has violated his rights. And so those are three different issues, and, you know, maybe the facts don't stack up the same way for each of the three issues. I mean, you know, I hear you saying, well, the detective or the sheriff's officer or the deputy on the street, you know, he doesn't, it's not fair for him to be charged with the knowledge of the prior arrest. But why isn't it fair for the sheriff's department as a whole, which is a different question, to be charged with the knowledge of the first arrest? To the extent Your Honor is referring to the Monell claim, ma'am, the case law is very specific, that the standard is very high in order to properly succeed on a Monell claim against an agency, whether it's the sheriff's office or even the county, although I would submit in this case it would be, the proper party would be the sheriff, not the county. You would have to, the plaintiff would have to plead in a non-conclusory fashion that the sheriff's office had a pre-existing policy or custom or practice that caused Mr. Sosa's civil rights to be violated. Now, obviously, the court below didn't even have to get past the first prong, but let's assume for a moment that he did, at least alleged it, that the constitutional rights were violated. The allegations in the complaint do not properly, do not sufficiently state in a non-conclusory fashion that the sheriff's office had a pre-existing custom or policy or practice that caused it. Just, you mentioned two times, the case law is clear, two times isn't enough to establish a Monell violation. So that would be my response to your honor in terms of that. And I see my... I have another question for you. So, you know, I'm back to this opinion and how it's going to be written. You are not making the argument, are you, that we should have a different rule for Friday afternoon, you know, on the, I'll call it the false imprisonment claim. You know, if you're arrested on a Friday afternoon, then three days is okay. If you're arrested on a Monday morning, three days is not okay. You're not making that argument, are you? Well, not specifically, your honor, but I will say that... And you won't defend that argument, will you? Well, that's part of the totality of the circumstances. Now, obviously, here we have a limited record. A lot of times it might be on a summary... Well, I don't know whether that cuts in your favor or not, but... Well, I understand that, your honor, but in terms of your... And I appreciate you, obviously, are big picture, and I appreciate that. So, to answer that question, I think whether it were Friday afternoon on a long holiday weekend, like in Baker, or a Friday versus a Wednesday, that could go to the reasonableness based on the totality of the circumstances, particularly when you're dealing with an out-of-state warrant. It wasn't like the warrant was just in the drawer at the Martin County Sheriff's Office. They had to communicate with out-of-state people who may or may not have been available. And, again, a lot of this isn't in the record, but that goes to the reasonableness of the delay, and I know Baker speaks to that. So, to answer your question, not a specific Friday night or Friday afternoon exception, but certainly to the extent that's part of the totality of the circumstances, then, yeah, that is part of it. As is... The problem is solvable in three hours on one occasion and three days on another, right? That's part of the totality of the circumstances. That's true, although I would note the plaintiff did not allege the specific date or the day of the week in the complaint, so we're stuck with that. But that could very well make a difference in terms of the totality of the circumstances. All right, thank you. Thank you. Thank you. A couple items I'd like to bring up is that both the Southern District of Florida and the Middle District of Florida have determined that making factual allegations in the complaint based upon information and belief is permissible, which we did. We claimed that there was more than just this example. So we did the pleading properly on information and belief as to more, and I think if this happened to David Sosa in this manner, why is he the only one? But also, a municipality's policy of inaction, despite awareness, constructive or actual, that its policy will cause a constitutional violation may be the functional equivalent of a decision by the city itself to violate the Constitution, and that's Connick v. Thompson, Supreme Court, 1989. If you'd like the full site, I can give it to you. All right, and so what we have here is a motion to dismiss. These are civil rights cases. I can tell you, although many of my clients are just poor folks, and I am a single solo practitioner up for 26 years until just recently I finally hired an associate, so we don't come here with a 50-page petition of facts prior to filing a lawsuit, and that's why we depend upon the case law regarding the liberal standards for motions to dismiss and looking at pleadings, and that's what we're requesting here. And I think when you look at it, oh, no discovery, liberal view on the pleadings, plaintiff should go back to the trial court, do that discovery, take those depositions, get all those documents, and all these things will be put together more clearly, and what probably will be motion for summary judgment at some point. And if there are no more questions. Thank you. I think we've got your case. We appreciate the presentation. Congratulations, Mr. Martin, on your new career. I wish you all the best. Court is in recess.